UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

HOMER CONLEY and
BARBARA EILEEN CONLEY,

       Debtors,               Bankruptcy No. 2:04-20367


CITIFINANCIAL MORTGAGE
COMPANY, INC.,

       Appellant,

v.                           Civil Action No. 2:07-0444
                             (A.P. No. 2:04-2022)

HOMER CONLEY and
BARBARA CONLEY,

       Appellees.


MEMORANDUM OPINION AND ORDER


       Appellant Citifinancial Mortgage Company, Inc. ("Citi")
appeals the February 13, 2007, order of the bankruptcy court in
this adversary proceeding granting US Bank's motion for summary
judgment.[1]

       The adversary proceeding was commenced by the debtors,
Homer and Barbara Conley, to determine the status and priority of

_____

       [1]On September 13, 2007, Homer and Barbara Conley filed a
letter indicating they join the brief submitted by U.S. Bank.
They have not filed a separate brief.

two deeds of trust, one held by Citi and the other by US Bank.
Those deeds of trust allegedly encumber the 1.81-acre tract of
real estate upon which the home of the debtors rests in Logan
County, West Virginia.  (Citi Br. at 3-4).  With discovery having
closed (id. at 2) and with the motions for summary judgment of
Citi and US Bank ready for decision, the bankruptcy court found
that defendant US Bank has a valid, first priority lien on the
1.81-acre tract by virtue of its deed of trust dated February 22,
2002, and executed by Homer Conley and Joshua Conley whom the
court found to be the owners.  (Bankr. Ct. Order at 5).  The
bankruptcy court determined that Homer and Barbara Conley did not
have title to the 1.81-acre tract that purportedly served as the
basis for Citi's deed of trust at the time it was executed by
them on October 30, 1997.  (Id.).

        Following oral argument in chambers on the motions for
summary judgment on September 7, 2006, Citi filed in a single
document, on September 12, 2006, a motion to compel the
disclosure (that is, generate and produce) a Fed. R. Civ. P. Rule
26(a)(2)(B) written report of an expert witness, Dexter Branham,
a surveyor, named not by US Bank or Citi but by the debtors/
plaintiffs Homer and Barbara Conley; a motion to extend discovery
for the taking of the depositions of Branham and another

2

surveyor, J. Bruce Hager, and of a third surveyor should Citi
choose to hire one; and a motion for trial on the merits if
Citi's motion for summary judgment were denied.  (Mot. to Comp.
at 4-5).  By order entered September 22, 2006, the bankruptcy
court stated that it was taking the motions for summary judgment
under advisement.  Conley v. Citifinancial Mortgage Co., A.P. No.
04-2022, slip op. at 1-2 (Bankr. S.D. W. Va. Sept. 22, 2006).

The bankruptcy court ruled on the issues arising in the
motions for summary judgment without addressing Citi's post-
hearing motions, presumably because it deemed the summary
judgment motions already submitted.  Although Citi lists, as an
issue presented on appeal, error by the bankruptcy court in not
granting Citi's motions to compel, extend discovery, and for
trial on the merits, that issue is not further pursued in Citi's
briefs, and may be deemed abandoned.  In any event, there is no
error in the bankruptcy court's failure to grant relief on Citi's
belated post-hearing motions which simply sought without good
cause to begin the discovery and summary judgment motions process
anew at a time when the motions for summary judgment were ripe
for decision.

Citi contends on appeal that the bankruptcy court erred
by not granting summary judgment in its favor and by granting

summary judgment in favor of US Bank.  (Citi Br. at 1).  Citi
focuses, first, on the purely legal question of whether a 1984
boundary agreement vested Homer and Barbara Conley with title to
the tract of land serving as the basis for Citi's deed of trust
and, second, the bankruptcy court's alleged lack of sufficient
evidence for making its central factual finding that one of the
two tracts of land in question (the 1.81-acre tract) is wholly
encompassed by the other (the "5-acre" tract shown as 15.84 acres
in the Branham survey).  (Id. at 13-19).  Much of the second
argument is Citi's assertion that the bankruptcy court improperly
relied on the unrecorded and unsworn plat of the survey by Dexter
Branham conducted by him from August 26 through 31, 2004, being
after the commencement of the adversary proceeding.  (Id.).

          Dexter Branham's plat of the survey of the 15.84-acre
tract shows a 1.43-acre out conveyance, leaving a 14.41-acre
tract that includes the 1.81 acre tract.  As will be seen, the
15.84-acre tract is referred to in all pertinent deeds and the US
Bank deed of trust as being a "5-acre" tract.  And the 1.81-acre
tract is referred to as one acre in the deed purporting to convey
it alone.

4

## I. Chain of Title

As found to be factually undisputed by the bankruptcy court, title to the "5-acre" tract (actually 15.48 acres per the Branham survey) that includes the 1.81-acre tract is derived from a 106-acre tract owned by Miller and Margaret Conley who in 1962 carved out the "5-acre" tract and conveyed it to Brady and Gency Conley who in 1974 conveyed it to Matthew and Edna Conley, the parents of Homer Conley.  Following Matthew's death, Edna Conley as the surviving joint tenant conveyed the "5-acre" tract in 1999 to Homer Conley and his son Joshua Conley who in turn executed the deed of trust in 2002 in favor of US Bank on the "5-acre" tract, using the same description set forth in every deed in the chain commencing with Miller and Margaret Conley.[2]  Fourteen

_____

[2]Although Homer Conley is the only named "Borrower" in the US Bank deed of trust, and is the only maker of the note it secures, both Homer and Joshua initialed each page and signed the deed of trust, with each one separately acknowledging his signature before a notary public and with both also signing an attached balloon rider.  Paragraph 13 of the deed of trust specifies that "any Borrower who co-signs this Security Instrument but does not execute the Note (a 'co-signer'): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; . . .."  (Deed of Trust ¶ 13).

Joshua thereby conveyed his one-half interest to the trustee therein named.   In construing a deed, the court must give effect to the intent of the parties, when the intent may be "ascertained from the instrument taken as a whole . . .."   <u>Blake v. Hedrick</u>, 94 W. Va. 761, 120 S.E. 906, 907 (1923); <u>see also</u> <u>Erwin v. Bethlehem Steel Corp.</u>, 134 W. Va. 900, 913-914, 62 S.E.2d 337, (continued...)

5

years after Miller and Margaret Conley conveyed away the "5-acre"
tract by the 1962 deed that was recorded February 4, 1963, they
nevertheless attempted in 1976 to convey part of it again,
described as one acre but found by the 1984 Hager survey to be
1.81 acres, to Homer and Barbara Conley.  In 1984, Homer and
Barbara obtained a boundary agreement from all those who
surrounded the 1.81-acre tract.

Homer and Barbara, refinancing from time to time,
executed a series of deeds of trust on the 1.81 acres,
culminating in the 1997 deed of trust in favor of Citi.  All of
the deeds and trust deeds referred to herein were duly and timely
recorded in the office of the Clerk of the County Commission of
Logan County.

## II.  Standard of Review

The court is vested with jurisdiction pursuant to 28
U.S.C. § 158.  Our court of appeals recently summarized the
governing standard of review:

> We review a grant of partial summary judgment by the
> bankruptcy court and the affirmance thereof by the
> district court de novo. Summary judgment in bankruptcy

---

[2](...continued)
345 (1950); Freudenberger Oil Co. v. Simmons, 75 W. Va. 337, 83
S.E. 995, syl. pt. 9 (1914).

6

> is governed by Federal Rule of Bankruptcy Procedure
> 7056, which incorporates the standards of Federal Rule
> of Civil Procedure 56 into bankruptcy proceedings.

United Rentals, Inc. v. Angell, 592 F.3d 525, 530 (4th Cir. 2010).

The Rule 56 standards are well settled.  A party is, of course, entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.  Title to the 1.81-Acre Tract

Notwithstanding the prior out conveyance of the "5-acre tract" in 1962 by Miller and Margaret Conley, Citi has identified four bases upon which it claims that Homer and Barbara Conley acquired title to the 1.81-acre tract constituting a part of that same "5-acre" tract prior to 1997.  (Id.).  They consist of the following: (1) the deed from Miller and Margaret Conley dated December 3, 1976, (2) the boundary agreement dated June 22, 1984,

7

(3) a corrective deed relating to the boundary agreement dated
June 26, 1984, and recorded on July 20, 1984, and (4) the
doctrine of adverse possession.[3]  (<u>Id.</u>; Citi Br. at 7).

A.  The 1976 Deed to Homer and Barbara Conley

On December 3, 1976, Miller and Margaret Conley
attempted to convey the 1.81-acre tract to Homer and Barbara
Conley, the deed for which was recorded that same day.  (Bankr.
Ct. Order at 4).  Inasmuch as Miller and Margaret Conley in 1962
conveyed the "5-acre" tract, of which the 1.81-acre tract is a
part, to Brady and Gency Conley, who, in 1974, conveyed the same
tract to Matthew and Edna Conley, Miller and Margaret Conley had
no interest in the 1.81-acre tract to convey in 1976.  (<u>Id.</u>).
Because the 1962 deed to Brady and Gency Conley was duly and
timely placed of record, it became constructive notice to all the
world under West Virginia Code section 40-1-9, stating

> Every such contract, every deed conveying any such
> estate or term, and every deed of gift, or trust deed
> or mortgage, conveying real estate shall be void, as to
> creditors, and subsequent purchasers for valuable

---

[3]This last basis is readily dismissed inasmuch as it is
presented for the first time on appeal.  Citi did not rely on
this argument prior to filing its appellate brief, nor did the
bankruptcy court discuss the doctrine of adverse possession in
its order granting summary judgment in favor of US Bank.

> consideration without notice, until and except from the
> time that it is duly admitted to record in the county
> wherein the property embraced in such contract, deed,
> trust deed or mortgage may be.

Id.  In this appeal, Citi appears to abandon the argument that

the 1976 deed conferred title upon Homer and Barbara Conley and

instead focuses on the 1984 boundary agreement.  (Citi Br. at 13-

19).  In any case, the 1976 deed is not a basis for Homer and

Barbara Conley acquiring an interest in the 1.81-acre tract.


B.  1984 Boundary Agreement


        The bankruptcy court acknowledged that while the

signatories to these agreements, notably Matthew and Edna Conley

and Homer and Barbara Conley, "may have believed that Homer and

Barbara Conley were the owners of the 1.81 acre tract," it

concluded, "they were clearly not attempting to convey such

ownership" with the boundary agreement.  (Bankr. Ct. Order at 5).

        The court finds it useful to set the boundary agreement

out at length.

> THIS AGREEMENT, dated this the 22nd of June, 1984, by
> and between MILLER CONLEY AND MARGARET CONLEY, his
> wife, parties of the first part, LASKIE PAYNE and
> LAWRENCE PAYNE, her husband, parties of the second
> part, MATTHEW CONLEY and EDNA CONLEY, his wife, parties
> of the third part, RAYMOND CONLEY and REBA CONLEY, his
> wife, parties of the fourth part, and HOMER CONLEY and

BARBARA CONLEY, his wife, parties of the fifth part.

WHEREAS, the parties of the first, second, third, fourth, and <u>fifth part own properties</u> situate on Smokehouse Fork of Big Harts Creek of Guyandotte River, Guyan District, Logan County, West Virginia; and

WHEREAS, the <u>parties of the first part sold unto the parties of the fifth part</u> that certain property situate [thence follows a metes and bounds description of the 1.81-acre tract] . . . .

\* \* \*

WHEREAS, the parties hereto are aware of the exact location of the boundary line; and

WHEREAS, the parties of the first, second, third, and fourth part are agreeable to entering into this agreement to clarify that they agree with the parties <u>of the fifth part that they are the owners of all of the property hereinabove described</u>, NOW, THEREFORE, ---

W I T N E S S E T H:

That for and in consideration of the sum of Ten ($10.00) Dollars, cash in hand paid, and other good and valuable considerations and the receipt and sufficiency all of which is hereby acknowledged, the parties hereto agree as follows:

1.   The parties of the first, second, third, and fourth part <u>agree that the aforementioned property is owned by the fifth parties</u> and that they have no boundary claims with regard to any of the property herein described.

2.   The parties of the first, second, third, and fourth part warrant that they own all the adjacent property to the aforementioned tract of land.

3.   The parties hereto enter into said agreement for the <u>purpose of establishing definitively the boundary lines</u> for the parties of the fifth part <u>and</u> as an <u>inducement to American National Bank in</u>

<u>allowing the parties of the fifth part to enter
into a loan agreement with said Bank</u>.

(06-22-84 Boundary Agreement, attached as Ex. to Appellant Br.)
(emphasis added).

The owners of the "5-acre" tract in June of 1984,
Matthew and Edna Conley, signed the boundary agreement along with
Miller and Margaret Conley, Homer and Barbara Conley, and others.
(<u>Id.</u>).  Attached to the 1984 boundary agreement was a plat drawn
of the 1.81-acre tract by professional surveyor, J. Bruce Hager,
LLS, of Alum Creek, West Virginia ("Hager plat").  (<u>Id.</u>).

As highlighted by Citi, the agreement states on three
different occasions that Homer and Barbara Conley, as parties of
the fifth part, own the property described, the 1.81-acre tract.
(<u>Id.</u>).  The agreement indicates that the "parties of the first
part [referring to Miller and Margaret Conley] sold unto the
parties of the fifth part [referring to Homer and Barbara Conley]
that certain property situate . . . ."  (<u>Id.</u>).  This statement in
the boundary agreement was premised on the 1976 alleged
conveyance from Miller and Margaret Conley to Homer and Barbara
Conley that the bankruptcy court aptly found to be ineffective.
Miller and Margaret Conley had no interest to convey in the 1.81-
acre tract at the time of the boundary agreement in 1984.  The

owners of the "5-acre" tract, and thus the 1.81-acre tract as well, were in 1984 the parties of the third part in the agreement, Matthew and Edna Conley.

The argument goes that Matthew and Edna Conley, as signatories to the agreement, indicated their belief that Homer and Barbara Conley were the owners of the 1.81-acre tract. The issue is whether the 1.81-acre tract was conveyed to Homer and Barbara Conley based on Matthew and Edna Conley's signatures to the boundary agreement.

"It has been repeatedly held that no particular formal words of grant are necessary to the validity of a deed. If the intention to grant or convey appears clearly from the paper, the deed will be held sufficient for the purpose, no matter how informal it may be." Lilly v. Raleigh Hardware Co., 90 W. Va. 607, 111 S.E. 592, 594 (1922) (citing Roberts v. Huntington Development & Gas Co., 89 W. Va. 384, 109 S.E. 348 (1921)).

However, "[w]hile specific, technical words of grant or transfer are not required under West Virginia law, some words manifesting intent to transfer the subject property are essential to the conveyance of property." Erwin v. Bethlehem Steel Corp., 134 W. Va. 900, 913-914, 62 S.E.2d 337, 345 (1950); accord Syl.

12

Pt. 9, <u>Freudenberger Oil Co. v. Simmons</u>, 75 W. Va. 337, 83 S.E. 995 (1914).  "The intent must be disclosed by the words of the deed, not the mere acts of the parties."  Syl. Pt. 9, <u>Freudenberger Oil</u>, 75 W. Va. 337, 83 S.E. 995; <u>accord</u> <u>Erwin</u>, 134 W. Va. at 913-14, 62 S.E.2d at 345.  "[T]he law rigidly exacts the presence of words in the contract, expressing the intention [to convey].  It cannot be supplied by mere inference arising from facts disclosed by extrinsic evidence and the relation of the parties to the instrument."  <u>Crookshanks v. Ransbarger</u>, 80 W. Va. 21, 24, 92 S.E.2d 78, 80 (1917).

Examples of language that are sufficient to constitute a conveyance include "convey" and "do grant."  <u>See</u>, <u>e.g.</u>, <u>Chapman v. Charter</u>, 46 W. Va. 769, 34 S.E. 768, 772 (1899) (term "convey" found to be adequate); Syl. pt. 13, <u>Dunfee v. Childs</u>, 59 W. Va. 225, 58 S.E. 209 (1906) (words "do grant" sufficient to convey property).  The boundary agreement does not use either "convey" or "grant."  (06-22-84 Boundary Agreement, attached as Ex. to Appellant Br.).

In <u>Laing v. McClung</u>, 103 W. Va. 341, 137 S.E. 744, 745-756 (1927), the Supreme Court of Appeals of West Virginia recognized the phrase, "for valuable consideration he has sold unto the second party this land," could constitute a conveyance. Although the nominal consideration of $10 was paid and there was

13

a reference to the sale of the land in the boundary agreement, such does not constitute a conveyance here.

Simply put, there is no clear indication that Matthew and Edna Conley meant by the boundary agreement to convey their interest in the 1-acre tract that became 1.81 acres to Homer and Barbara Conley. Acknowledging another's ownership is not equivalent to stating the desire to transfer.

The final underlined portion further underscores the conclusion that the boundary agreement was not a deed. The clear language of the agreement explains its intent was to establish boundaries so that the bank would be reassured in loaning money to Homer and Barbara Conley. Indeed, Citi does not dispute that the document is a boundary agreement and refers to the document as such. (Citi Br. at 2).

Citi relies on Williamson v. Williamson, 407 F. Supp. 370 (E.D. Va. 1976), aff'd 547 F.2d 811 (4th Cir. 1977); Warren v. Boggs, 90 W. Va. 329, 111 S.E. 351 (1922); Goff v. Lever, 566 So.2d 1274 (Miss. 1990); and Burruss v. Bailey, 238 Ga. 72, 230 S.E.2d 878 (1976), for its proposition that "[i]n all the cases where counsel has found there was a written agreement, it was upheld by the Courts to determine the boundaries, as the parties

agreed, in the written agreement." (Citi Br. at 15). Citi contends the "bankruptcy court erred . . . when it found that the 1984 written and recorded boundary agreement with plat . . . did not establish the boundaries to the plaintiffs' real estate described as 1.81 acres." (Id. at 2). This assignment of error misses the mark. The bankruptcy court did not find that the 1984 agreement failed to establish boundaries. (See id. at 5). Rather, the bankruptcy court found that the 1984 boundary agreement did not contain the necessary language sufficient to create a conveyance. (Id.). While it may be true that the boundary agreement could have been used to determine the boundaries of the 1.81-acre tract, it does not mean that such an agreement could be construed as a deed. The 1984 boundary agreement between the Conleys is insufficient to constitute a valid conveyance.

C. Corrective Deed

        In their self-styled corrective deed dated June 26, 1984, and recorded on July 20, 1984, Homer and Barbara Conley "conveyed" the 1.81-acre tract to themselves. (Citi Br. at 7). Quite simply, a party cannot convey an interest it does not own to itself, and Citi does not argue otherwise in its appellate

15

briefs.  Instead, Citi relies on the 1984 boundary agreement
preceding the corrective deed for its conclusion that Homer and
Barbara Conley had title to the 1.81-acre tract at the time of
the making of the deed of trust in 1997.  The corrective deed is
not a basis for concluding the debtors held title to the 1.81-
acre tract.

IV.  Citi's Contention that Evidence is Insufficient for
     Summary Judgment for US Bank - The Branham Survey

The focus of Citi's claim that the evidence was
insufficient to merit summary judgment centers upon the
bankruptcy court's reliance on the Branham Survey, which
indicates the "5-acre" tract includes the entirety of the 1.81-
acre tract.  (Id. at 2, 4; 08-31-04 Branham Survey, attached as
Ex. L to Homer Conley Depo., Ex. to Citi M.S.J.).  In reaching
its conclusion, the bankruptcy court relies upon the Branham
survey and unidentified documents of record in the Logan County
courthouse.  (Bankr. Ct. Order at 1-2).  In justifying its use of
the Branham survey, the bankruptcy court explained the plat was
submitted as an attachment to Citi's motion, the survey features
the seal of Mr. Branham certifying it, and "[o]ther than mere
argumentation on the behalf of Citifinancial's counsel, there is

16

nothing in the record that indicates that the survey is not accurate and there is no survey of record contradicting the findings of Mr. Branham." (Bankr. Ct. Order at 2).

In attacking the use of the Branham survey, Citi undertakes to make the following six points: (1) the Branham survey is inadmissible; (2) the bankruptcy court incorrectly concluded the Branham survey was recorded; (3) the bankruptcy court incorrectly concluded the Branham survey was the only survey of record; (4) the Branham survey is unsworn; (5) the Branham survey, contrary to the bankruptcy court's statement, was "offered by the plaintiffs"; and (6) the Branham survey is unreliable inasmuch as Homer Conley accompanied the surveyor during his duties. The court addresses each of those contentions.

Regarding the third point, Citi contends the bankruptcy court incorrectly found the Branham survey was the only survey of record. (Citi Br. at 1). The bankruptcy court did state at one point that the Branham survey "is the only survey of record." (Bankr. Ct. Order at 4). The court also stated that "there is no survey of record contradicting the findings of Mr. Branham." (Id. at 2). Indeed, the Hager survey does not contradict the Branham survey's inclusion of the 1.81-acre tract within the "5-acre" tract but simply outlines the 1.81-acre tract alone.

17

Citi's primary contention is its first one, that the Branham survey is "inadmissible."[4]  (Citi Br. at 16).  Citing Blain v. Woods, 145 W. Va. 297, 115 S.E.3d 88 (1960); Mylius v. Traine-Andrew Lumber Company, 69 W. Va. 346, 71 S.E. 404 (1911), it asserts "the opinion of a surveyor as to the true location of a boundary line is inadmissible as evidence."  (Citi Br. at 16).  The supreme court of appeals has stated, "[t]he trial court correctly ruled that the defendant's surveyor could not give his opinion as to where he thought this line was located.  A surveyor can testify as to facts but not as to where he thinks the line is located."  Blain, 145 W. Va. at 306, 115 S.E.3d at 94 (citing Mylius, 69 W. Va. 346, 71 S.E. 404, reaffirmed on another point after new trial, 73 W. Va. 674, 81 S.E. 823; Adkins v. Downing Gas Co., 120 W. Va. 401, 198 S.E. 131).

The Branham survey is part of the record on appeal.  (Homer Conley Dep., Ex. L, Jul. 14, 2005).  Citi both introduced and relied upon it in seeking summary judgment below.  (Citi's

_____

[4]As will be seen in the ensuing discussion, the Branham survey is admissible.  As such, several of the six contentions offered by Citi need not be addressed in any detail.  Respecting the second contention, the court discerns that the bankruptcy court did not state that the Branham survey was recorded, but it matters not.  Additionally, to the extent that the second contention has an evidentiary component, it meets the same fate as the fourth ("unsworn") and sixth ("unreliable") contentions.  Any admissibility challenge to the Branham survey necessarily fails in view of the discussion that immediately follows.

18

Mem. Supp. Mot. Summ. J. 4 ("Debtors have had all the parcels surveyed in August of 2004 by Dexter Branham.  This survey further confirms the claim of Citicorp.")).  Irrespective of the case law relied upon by Citi, it is settled that "while unauthenticated documents generally cannot be considered on a motion for summary judgment, a party who submits such a document without reservation cannot subsequently complain because the district court considered the contents of the document." Woods v. City of Chicago, 234 F.3d 979, 989 (7th Cir. 2000); see also Walker v. Wayne County, Iowa, 850 F.2d 433, 435 (8th Cir. 1988) (denial of defendants' summary judgment motion affirmed where defendants submitted into evidence, without reservation, a document generating genuine issues of material fact and it was considered by the court even though it contained inadmissible double hearsay); see also Miller v. Elegant Junk, 616 F. Supp. 551, 553 (S.D. W. Va. 1985) (a joint submission of exhibits within a pretrial order indicates (1) the absence of any inaccuracy in them, and (2) that they are properly viewed as an admission or stipulation; such exhibits may thus be relied upon as supporting entry of summary judgment) (citing In Re Japanese Electronic Prods., 723 F.2d 238, 258 (3d Cir. 1983) ("Rule 56(c) does not exclude the grant of summary judgment on the basis of materials originating entirely with the opponent of the motion."), reversed on other grounds by Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio, 475 U.S. 574 (1986), <u>and abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Pfeiffer v. Marion Center Area School Dist.</u>, 917 F.2d 779, 781 (3rd Cir. 1990); <u>Higgenbotham v. Ochsner Foundation</u> <u>Hospital</u>, 607 F.2d 653, 656 (5th Cir. 1979)("It is bootless to contend [that a deposition in the summary judgment evidentiary record] could properly be ignored by the judge in ruling on the motion for summary judgment because plaintiff's counsel did not in some manner bring it directly to the judge's attention."); <u>Stepanischen v. Merchants Despatch Transportation Corp.</u>, 722 F.2d 922,  (1st Cir. 1983) (noting that Rule 56 "does not limit the court's examination to issues raised in affidavits or to record evidence pinpointed in the parties' memoranda.").

The bankruptcy court thus properly relied upon the Branham survey.  Citi invited that reliance and will not now be heard to complain.[5]

---

[5]Citi's fifth assertion, namely, that the debtors offered the Branham survey, is not borne out by the record below.  It is true that debtors identified Branham as an expert witness.  When Citi moved for summary judgment, however, it attached the entire deposition of Homer Conley, including Exhibit L thereto, the Branham plat of the "5-acre" tract.  Additionally, it was counsel for Citi during the Homer Conley deposition who had the Branham plat so marked.  (Homer Conley Depo. at 53, attached as Ex. to Citi M.S.J.).  Indeed, Citi's counsel appears to have acknowledged during the deposition that the Branham plat is a depiction of the "5-acre" tract.  (Homer Conley Depo. at 50-53, attached as Ex. to Citi M.S.J.).

Viewed in this light, Citi's counsel used the Branham plat in questioning the deponent regarding the "5-acre" tract.  He

(continued...)

V.


In the case before the bankruptcy judge, the complaint was filed on February 13, 2004, and the parties had until September 7, 2005 to file dispositive motions.  (Order Modifying Scheduling Order, Aug. 31, 2005).  The Branham survey was introduced into evidence by Citi as an exhibit to Homer Conley's deposition, and Citi failed to produce any evidence contradicting the conclusion of the Branham survey that the "5-acre" tract subsumes the 1.81-acre tract.  No reasonable jury could find from the evidence presented that the 1.81-acre tract exists independently and disjoined from the "5-acre" tract.

While the concern of keeping the ultimate conclusion exclusively within the province of the jury as fact finder is an important one and should be protected through the court's gatekeeping function, that concern is not present here.  Summary judgment is proper where there is no genuine issue of material fact.  Fed. R. Civ. P. 56.  Opposing counsel "must do more than simply show there is some metaphysical doubt as to the material

[5](...continued)
then later essentially vouched for the Branham plat's authenticity by including it as part of his summary judgment exhibits without reservation.  So it is that the bankruptcy court properly considered the Branham survey.

facts." <u>Matsushita Electric Industrial Co., Ltd. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  <u>See also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."[6]

It is, for the foregoing reasons, ORDERED that the decision of the bankruptcy court dated February 13, 2007, be, and it hereby is, affirmed.[7]

The Clerk is directed to forward a copy of this written opinion and order to all counsel of record and to the Honorable Ronald G. Pearson, United States Bankruptcy Judge.

DATED: September 29, 2010

John T. Copenhaver, Jr.
United States District Judge

---

[6]Both Citi and U.S. Bank seek to have the double-wide manufactured home situated on the 1.81 acre tract declared as realty rather than personal property. (Citi Br. at 4, 6).  While Citi notes this issue repeatedly in the briefing, its resolution has no bearing on this appeal.

[7]Inasmuch as it determined that Homer and Barbara Conley did not have title to the 1.81-acre tract, the bankruptcy court deferred consideration of what subordinate effect may be afforded "the October 30, 1997, trust deed [of Citi], executed when the Debtor[s] had no interest in the encumbered property, but in which he [Homer Conley] subsequently acquired a half-interest and whether such circumstances gives rise to a junior lien."  (<u>Id.</u> at 4-5).  If properly preserved and otherwise appropriate, Citi may move for the adjudication of that issue below.